UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

———

No. 6:19-cv-00527

———

**John DeYoung et al.,**
*Plaintiffs,*
v.
**Dillon Logistics, Inc. et al.,**
*Defendants.*

———

**ORDER**

Before the court is plaintiff DeYoung's motion for spoliation instructions (Doc. 64) and defendants' response in opposition. Doc. 69. The motion requests two separate instructions dealing with the following: (1) the destruction of defendant Hines's cellphone and (2) the disappearance of text messages and a deleted logbook. *See* Doc. 64 at 9. For the reasons set forth below, DeYoung's motion is **granted in part**.

**Standards**

"A federal court has the inherent power to sanction a party who has abused the judicial process by spoliating evidence." *Smith v. Chrysler Grp., LLC*, No. 1:15-CV-218, 2016 WL 7741735, at *3 (E.D. Tex. Aug. 31, 2016) (citation omitted). "Spoliation is the destruction or the significant and meaningful alteration of evidence." *Id.* (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)). "Mere destroying or altering of evidence, however, does not necessarily mean that a party has engaged in sanction-worthy spoliation." *Id.* (citing *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 789-800 (N.D. Tex. 2011)). Instead, "parties are required to take care in, but not extraordinary measures, to preserve evidence." *Id.* (quoting *Allstate Texas Lloyd's v. McKinney*, 964 F. Supp. 2d 678, 684 (S.D. Tex. 2013)).

A party seeking spoliation sanctions must establish:

1.  the existence of a duty to preserve evidence;

2.  a culpable breach of that duty; and

3.  resulting prejudice to the innocent party.

*Id.* (citing *Allstate*, 964 F. Supp. 2d at 682). Moreover, the type of spoliation sanction selected "must be no harsher than necessary to respond to the need to punish or deter and to address the impact on discovery." *Id.* (cleaned up).[1]

Here, DeYoung's motion only requests spoliation instructions. To obtain spoliation instructions, the moving party "must demonstrate the spoliator's bad faith." *Id.* at *4 (citing *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015), among others). "The hallmark of the bad faith requirement is advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice." *Id.* (cleaned up). Mere negligence is not enough. *See id.* (citations omitted).

### Hines's cellphone

Having compared Hines's driving logs with his phone records, plaintiffs allege that Hines was texting, making phone calls, and driving all at once on the night of the collision. *See* Doc. 64-1 at 16-17. The records allegedly show that Hines's phone was in use after the crash. *See id.* Defendants did not contradict this representation. *See* Doc. 69 at 2-3.

Plaintiffs' attorneys sent a letter to Hines 17 days after the collision asking him to turn over his phone. *See* Doc. 64-2. This request to turn over the phone was communicated to Hines by Dillon's attorneys. Doc. 64-3 at 99:06-99:22. But by the time plaintiffs' attorney received the phone six months later, the phone was destroyed. *See id.* at 99:06-100:06. Ultimately,

---

[1] *See Smith*, 2016 WL 7741735, at *3 ("Appropriate remedies may include awarding attorney's fees, deeming certain facts admitted, giving an adverse inference instruction to the jury, excluding evidence or expert testimony, striking pleadings, entering a default judgment, and dismissing the case entirely.") (citing *Allstate*, 964 F. Supp. 2d at 683).

Hines invoked his Fifth Amendment rights against self-in-crimination when asked about the cellphone's destruction. Doc. 64-8 at 14:23-15:18.

Plaintiffs argue that the cellphone was relevant to the case because it could have demonstrated that "Hines was dis-tracted when he caused the death of Kimberly DeYoung" or that "Hines' direct supervisor at Dillon, Brian Hogg, was sub-jectively aware of Hines' cellphone use and abuse." Doc. 64 at 5. According to plaintiffs, Hines was "texting and calling around the time of the wreck, so he knew that would be an issue in any case against him, civil or criminal." *Id* at 6. Fur-ther, "Dillon told Hines that the phone was being sought [by] opposing attorneys and he needed to turn it over." *Id.* Plain-tiffs also argue that Hines's invocation of his Fifth Amend-ment rights justifies an adverse inference and a spoliation in-struction. *See id.* at 6 (citing *Hinojosa v. Butler*, 547 F.3d 285, 291 (5th Cir. 2008)). Defendants have only offered a single argu-ment with regards to this portion of plaintiffs' motion: that Hines's invocation of his Fifth Amendment rights "is not evi-dence" of spoliation. Doc. 69 ¶ 9.

**1.** A duty to preserve evidence arises when a party reason-ably anticipates litigation. *See Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d 423, 436 (2d Cir. 2001). The defendants do not argue whether Hines had a duty to preserve his cellphone be-cause he was given notice of its importance to anticipated lit-igation within days of the collision. If Hines was on his phone the night of the accident—which is not disputed by defend-ants—then it was reasonable to assume that Hines's phone was relevant to the reasonably anticipated claims plaintiffs would file.

**2.** Bad faith is required to justify spoliation instructions. *See Rimkus*, 688 F. Supp. 2d at 642. Usually, this factor involves some analysis of the stated reasons for the destruction of evi-dence. *See id.* at 643 ("The defendants' proffered reasons and explanations for deleting or destroying the emails and

- 3 -

attachments are inconsistent and lack record support."). Here, no explanation has been offered because Hines invoked his Fifth Amendment rights when asked about the phone's destruction.

Defendants argue that the invocation of Hines's Fifth Amendment rights is irrelevant to this spoliation analysis. However, the only court opinion to discuss this question in any length reached the opposite conclusion. After the collapse of Enron, a civil lawsuit in the Southern District of Texas turned on destroyed evidence. *See In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 1006 (S.D. Tex. 2010). The Southern District ultimately found that an employee's invocation of his Fifth Amendment rights supported a "reasonable inference in favor" of the party moving for spoliation sanctions. *See id.* There, as here, the former Enron employee had complete control over the destroyed evidence. *See id.*

Nonetheless, the record supports a bad faith finding regardless of Hines's invocation of his rights. DeYoung has produced evidence establishing that the phone was functioning after the collision. That evidence, combined with the phone's utter destruction, supports a bad faith finding. Requiring more evidence would place an insurmountable burden on movants. *See Rimkus*, 688 F. Supp. 2d at 616 (emphasizing that the evidentiary burden placed on the moving party cannot be so insurmountable that the spoliating party is insulated from sanction). DeYoung has met his burden in establishing bad faith.

**3.** "Case law in the Fifth Circuit indicates that an adverse inference instruction is not proper unless there is a showing that the spoliated evidence would have been relevant." *See id.* at 617 (citing *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 n.8 (5th Cir. 2005)). One court stated that "before an adverse inference may be drawn, there must be some showing that there is in fact a nexus between the proposed inference and the information contained in the lost evidence." *Consol.*

*Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 346 (M.D. La. 2006). In cases like this one, courts often look to evidence of what the destroyed information might have contained. *See Rimkus*, 688 F. Supp. 2d at 645 ("Between the records the defendants did produce, the deleted record Rimkus obtained from other sources, and other evidence of the contents of the deleted lost records, . . . . [t]he evidence . . . shows that some would have been favorable to Rimkus.").

Here, the record is replete with evidence suggesting that the phone would have obtained evidence core to DeYoung's claims. The phone logs and the subpoenaed AT&T records obtained by DeYoung show that Hines was texting his supervisor during the night of the collision. *See* Doc. 64-1 at 15-16. Hines also was texting Rachel Hernandez during his trip, and she has admitted that her text exchanges with Hines may have been "inappropriate." *See* Doc. 64-6 at 20:24-21:08; 21:25-22:20. The content and timing of these texts would have been relevant to DeYoung's claims.

In conclusion, the court grants DeYoung's request for spoliation instruction against Hines. The adverse inference instructions outlined in DeYoung's motion are appropriate, as the instruction will "restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).

**Hogg's destroyed text messages and the destroyed log**

In addition to the destroyed phone, text messages and a logbook were also lost after the crash and before they could be turned over in discovery. Brian Hogg was Hines's supervisor. *See* Doc. 64-4 at 10:21-10:23. According to DeYoung, evidence in the record suggests that Hogg was texting with Hines at the time of the wreck. *See* Doc. 64-1 at 15-17.

Nonetheless, the text messages between Hogg and Hines are no longer available. *See* Doc. 64-5.[2]

DeYoung argues that Hogg's admission that he suspected "from the get-go" that Hines had possibly been on his phone at the time of the wreck demonstrates that he "knew in the very moments after his wreck that Hines' cellphone use could be at issue, but he deleted those text messages anyway." Doc. 64 at 7. DeYoung argues that defendants were put on notice within two weeks of the collision that cellphone evidence needed to be preserved. *See id.* at 8.

Dillon also failed to preserve its logbook even though DeYoung requested that Dillon preserve Hines's driving logs three days after the collision. *See* Doc. 64-7. As a result, DeYoung only has the use of three weeks' worth of logs, instead of the six months it otherwise would have had at its disposal.

The court need not delve into all the relevant factors on this second spoliation request because there is a critical lack of evidence suggesting bad faith. Unlike the complete destruction of an otherwise operational cellphone by Hines, the mere deletion of text messages is commonplace. The lack of evidence suggesting bad faith is dispositive.

Similarly, Dillon has pointed to the testimony of one of its employees, Ms. Rebecca Wesley, to show that the failure to preserve the logbook was an accident on her part. *See* Doc. 69 at 6-7. While this may amount to negligence, it is not enough to suggest bad faith. *See Vick v. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975) ("Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case.").

---

[2] The court avoids any characterization of what happened to the texts because the parties dispute whether they were deleted at all. *See* Doc. 69 at 5. Defendants dispute that the text messages were deleted but concede that they are somehow no longer on Hogg's phone. *See id.*

## Conclusion

For the foregoing reasons, the court **partially grants** DeYoung's motion for spoliation instructions. Doc. 64. The following instruction will be used at trial:

*"Ladies and gentlemen of the jury, if you find that defendant Antony Hines willingly destroyed or failed to preserve evidence, specifically his cellphone, you may infer that Antony Hines did so because the evidence would have been damaging to his case."*

*So ordered by the court on February 11, 2021.*

J. CAMPBELL BARKER
United States District Judge