UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:19-cv-00527

**John DeYoung et al.,**
*Plaintiffs,*

v.

**Dillon Logistics, Inc. et al.,**
*Defendants.*

### ORDER

The court now turns to the final pending summary judgment motion in this case, filed by the Dillon defendants. Doc. 100. This motion overlaps significantly with defendant Hines's motion to exclude expert testimony (Doc. 104), Hines's motion for summary judgment (Doc. 102), and Dillon's motion in limine. Doc. 139.

Dillon argues that plaintiffs have produced no evidence to make out the essential elements of gross negligence. *See* Doc. 100 at 2. There are two elements to a gross negligence claim:

- Viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

- The actor must have actual, subjective awareness of the risk involved, but nevertheless proceed[s] in conscious indifference to the rights, safety, or welfare of others.

*Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001) (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994)). Under the first element an extreme risk is "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex.1998)

(citations omitted). Under the subjective element, "actual awareness means the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Id.* Circumstantial evidence may suffice to prove either element. *Id.*

The Dillon motion for summary judgment contained several arguments that plaintiffs failed to produce evidence that survives summary judgment with respect to the claims asserted against Hines. *See* Doc. 100 at 4. The court reached the opposite conclusion and held that "plaintiffs have created a genuine issue of material fact concerning both required [gross negligence] elements." Doc. 155 at 10. In reaching that conclusion, the court overruled Hines's evidentiary objections, many of which were asserted by Dillon as well. *See id.* 3-8.

The court **denies** all of Dillon's evidentiary objections for reasons laid out in previous court orders. *See id.*; Doc. 130 (denying defendants' motion to exclude expert testimony). Dillon reasserts an inaccurate depiction of plaintiffs' expert report by writing that "Plaintiffs' very own experts admit that they could not say with reasonable probability that he was using his cell phone in any way within the two-minute period before Defendant Hines applied his brakes to avoid a collision." Doc. 120 at 3. The court, upon examining the record in a separate order, concluded that the defendants were "mispresenst[ing]" the record and "appear[ed] to misunderstand the difference between direct and circumstantial evidence." Doc. 130 at 1. The court's order clarified that, in context, plaintiffs' expert testimony was not uncertain in any material way. *See id.* at 1-3.

Elsewhere, Dillon argues that plaintiffs have provided no evidence going towards the subjective prong or plaintiffs' claims premised on Dillon's "negligent hiring, retaining, supervision, and retention of Defendant Hines." Doc. 100 at 5. Dillon has provided very little case law for either argument.

The defendants' assertions are belied by the record before the court. Plaintiffs' gross negligence claims rely on two

expert reports, phone records, an accident reconstruction, and evidence of training Hines received as an employee of his codefendants.

In discovery, defendant Dillon produced a screenshot of its electronic Omnitracs system, which shows the "Hard Braking Incident Details" recorded from the Dillon truck Hines was driving at the time of the accident. Doc. 105-1. According to the deposition of a Dillon representative, this report is triggered by a "sudden deceleration." Doc. 105-2. In this case, Hines pressing on the brakes. *See id.*

Plaintiffs argue that disputed cellphone records, when combined with the expert testimony of accident reconstructionist Irwin, show that Hines made two outgoing calls around the time of the accident. *See* Doc. 105-3; 105-4 at 15. The same expert testimony purports to show that there were approximately 19 seconds between when Hines would have first been able to see the line of stopped or stopping cars on I-20 and the time of the crash itself. Doc. 105-5 at 53:18-53:25. Irwin reached the conclusion that Hines did not start braking or evasive steering until two seconds before the wreck. *Id.* at 58:22-59:11.

Irwin also indicates that scientific analysis can establish a four-minute window in which the crash occurred as compared to the phone logs. *Id.* at 22:05-23:10. He also indicates that the crash could have occurred when one call from Hines's phone was ending or when Hines was making two outgoing calls. *See* 105-4 at 16, n.16; 16-17, n.17.

The plaintiffs also rely on a comparison of Hines's phone records and his electronic driving logs. One of plaintiffs' exhibits indicates that in the one hour and 57 minutes before the accident, Hines received 29 text messages, sent 24 messages, and engaged in four phone conversations—two of which were purportedly over 25 minutes long. Doc. 105-6 at 16.

Importantly for the instant motion, portions of the expert reports also show prior phone use while driving on dates

before the accident. *See id.* at 12. Plaintiffs assert that the logs and records show "unequivocally" that Hines was texting "back and forth" with his superior, Brian Hogg, while driving. Doc. 107 at 3 (citation omitted). The evidence of texting between Hines and Hogg allegedly includes texting on the night of the accident. *See id.* (citation omitted).

At his deposition, Hogg testified that he was responsible for the hiring and firing of truck drivers. Doc. 107-2 at 8:10-16. He also testified that he was responsible for enforcing state, federal, and corporate rules. *Id.* at 6:1-6. This included the rule that "[d]rivers who are seen or discovered to be operating hand-held portable communication devices by Dillon Logistics . . . will be subject to disciplinary action." *Id.* at 33:4-14. Importantly, Hogg also described the "Omnitracs" system that allowed him to know when his drivers were on the road. *See id.* at 8:17-9:11. He agreed that texting and driving by one of his drivers would be "reckless" and "careless" conduct. *Id.* at 36:4-11. Later, Hogg said that such phone usage would amount to "an extreme degree of risk." *Id.* at 40:24-41:1.

Hogg nonetheless indicated that he did not know that Hines was texting and driving. *See id.* at 43:17-25. In the same portion of Hogg's testimony, however, he said that he had not been texting Hines on the night of the accident—a representation belied by the phone records. *See id.*

With respect to Mr. Hogg, Dillon does not contest that Hogg had a history of texting Hines or that Hogg is a vice principal of Dillon. *See* Doc. 120 at 4. Dillon instead repackages its evidentiary arguments with respect to Hines for Hogg. Dillon suggests that the evidence of texting is irrelevant because the record does not show that Hogg was texting Hines at the moment of the accident. *See id.* ("Plaintiffs are unable to put forth any reliable evidence that Mr. Hogg was communicating with Defendant Hines near the time of the accident.").

Here, Dillon misunderstands plaintiffs' claims. No such timing requirement exists to maintain plaintiffs' claim of gross negligence against Dillon. As the court has ruled in a separate order, using a cellphone while operating a commercial motor vehicle involves an objectively extreme degree of risk. *See* Doc. 155 at 10 (relying on *Braun v. Clean Harbors Env't. Servs., Inc.*, 1:14-CV-524, 2016 WL 7551118, at *4 (E.D. Tex. Jan. 25, 2016)). A supervisor actively texting an on-duty driver entails an extreme risk that is "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff."[1] *Ellender*, 968 S.W.2d at 921. As with the claims against Hines, the plaintiffs have produced evidence creating a genuine issue of material fact with respect to the objective prong.

Further, the evidence provided by the plaintiffs, viewed in the light most favorable to the nonmoving party, raises a question for the jury of whether Hogg was subjectively aware of the extreme risks his actions entailed. Hogg was, after all, the individual charged with enforcing the rules he himself was allegedly breaking. *See* Doc. 107-2 at 36:4-11 (agreeing that texting while driving a truck amounts to "reckless" and "careless" conduct). While Hogg claims that he lacked any awareness that he was texting Hines while the latter was driving, that portion of his testimony is unreliable at best. *See id.* at 43:17-22 (erroneously claiming that he was not texting Hines on the night of the accident). This inconsistency, combined with Hogg's ability to know where his drivers are and when they are on the road, creates a triable issue for the jury that will, in part, turn on Hogg's testimony. *See id.* at 43:13-25 (testifying that he looked at the Omnitracs system when he texted Hines on the day of the wreck).

---

[1] The objective risk inherent to texting an on-duty driver is made manifest by the record, which includes government regulations, expert testimony, and the testimony of numerous corporate officials. *See* Doc. 107 at 7-8 (collecting record citations).

## Conclusion

The court holds that plaintiffs have provided enough evidence on both the objective and subjective gross negligence prongs to survive summary judgment. Accordingly, defendants' motion (Doc. 100) is **denied**.

*So ordered by the court on March 17, 2021.*

J. CAMPBELL BARKER
United States District Judge